UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

**FILED**

JUL 1 3 2005


CLERK

| | | |
|---|---|---|
| ELAINE QUICK BEAR QUIVER; THERESA TWO BULLS; VERNON SCHMIDT; and ALFRED BONE SHIRT, | * * * | Civ. 02-5069 |
| Plaintiffs, | * * | |
| vs. | * | OPINION AND ORDER |
| CHRIS NELSON, in his official capacity as Secretary of State of the State of South Dakota; SUE GANJE, in her official capacity as County Auditor of Shannon County; and KATHLEEN FLAKUS, in her official capacity as County Auditor of Tripp County, | * * * * | |
| Defendants. | * | |

Before MURPHY, Circuit Judge, SCHREIER and ERICKSEN, District Judges.

SCHREIER, District Judge.

On March 7, 2005, South Dakota House Bill 1265 became effective without preclearance under § 5 of the Voting Rights Act of 1965 (VRA). Prior to HB 1265's passage, county commissioners could only redistrict county

commissioner districts one time per decade in response to the decennial census. HB 1265 allows county commissioners to redistrict county commissioner districts a second time per decade upon a showing to the governor and secretary of state by the county commissioners of a perceived violation of state or federal law. Plaintiffs, who are four Native American qualified voters who reside in Shannon and Todd counties, allege that enforcement of HB 1265 should be enjoined until the Bill is precleared in accordance with § 5 of the VRA because immediate enforcement of the bill violates the terms of the consent order entered in this matter on December 27, 2002, § 5 of the VRA, and 42 U.S.C. § 1973c.

A judge of this circuit convened this three-judge district court to consider plaintiffs' § 5 claim. See 28 U.S.C. § 2284(b); 42 U.S.C. § 1973c. The parties submitted briefs and affidavits and appeared for a hearing, during which documentary evidence and oral argument were offered. We grant plaintiffs' request for temporary injunctive relief and order the State to submit House Bill 1265 for preclearance in 55 days.

## I. Background

Section 5 requires federal preclearance of voting changes in certain state and local jurisdictions. "Section 5 initially covered southern states and areas in the north where literacy tests and other discriminatory devices had been used to disenfranchise qualified African-American voters." South Carolina v. Katzenbach, 383 U.S. 301, 334-33, 86 S. Ct. 803, 15 L. Ed. 2d 769 (1966). Other jurisdictions were subsequently designated as covered jurisdiction by amendments to § 5. In 1975, Shannon and Todd counties in South Dakota became covered jurisdictions. See 28 C.F.R. pt. 51 app. (list of covered jurisdictions); 41 Fed. Reg. 784 (Jan. 5, 1976).

On August 23, 1977, then South Dakota Attorney General William Janklow voiced his opposition to the VRA, calling it an "absurdity" that created an "unworkable solution to a nonexistent problem." 77-73 Opinion of the Attorney General 175 (1977). Janklow advised the secretary of state that he intended to pursue litigation to exempt South Dakota from the VRA and meanwhile to ignore its preclearance mandates. Id. at 184. This practice continued virtually unabated even after Janklow's term as Attorney General ended, and, as a result, a significant preclearance backlog existed when this lawsuit was filed in 2002.

In order to avoid major difficulties in implementing South Dakota's election processes, the parties negotiated the terms of a consent order. In the consent order dated December 27, 2002, the court found that while the State of South Dakota had obtained preclearance for several voting changes enacted since November 1, 1972, it had failed to obtain preclearance for a substantial number of other voting changes. Paragraph 1 of the consent order provides:

> Notwithstanding any state law to the contrary, 'Any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting' enacted after November 1, 1972, which affects voting in Shannon or Todd counties must be precleared in accordance with Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c, before it may be implemented.

The consent order also provides that the parties shall negotiate a comprehensive remedial plan to bring the state into full compliance through the orderly submission of all unprecleared voting changes to the United States Attorney General. The parties reached an agreement on a submission schedule for preclearance, under which plaintiffs were given an opportunity to monitor defendants' compliance with the remedial plan. The remedial plan also provided for preclearance of future voting change enactments. Under the consent decree, this court retained jurisdiction to "enter such orders and injunctions as it deems

necessary and appropriate in the future to ensure that the State complies promptly with its obligations under Section 5 and with the terms of this consent order." Consent Order, Document 30, ¶ 6. By April of 2005, the State had submitted 714 statutes and 545 administrative rule changes to the Attorney General for preclearance. (Docket 115-1, p. 1).

On January 27, 2005, separate plaintiffs filed suit in Charles Mix County alleging that the county commission districts in Charles Mix County were malapportioned in violation of the one-person-one-vote standard of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, that the Native American voting strength was diluted in violation of § 2 of the VRA, and that the county commission districts were being maintained with the discriminatory purpose of denying or abridging the right of Native Americans to vote on account of race or color in violation of the Fourteenth and Fifteenth Amendments to the United States Constitution.[1] Blackmoon v. Charles Mix County, CIV. 05-4017. In response to the Blackmoon complaint, Blackmoon defendants requested the South Dakota legislature to pass House Bill 1265, to establish a process for emergency redistricting of county commissioner districts. Under current state law, SDCL 7-8-10, redistricting could not legally occur again until 2012.[2] Blackmoon plaintiffs filed a motion for partial summary judgment regarding only their malapportionment claim on March 7, 2005. House Bill 1265 was passed on March 7, 2005. Because HB 1265 contained an emergency clause, it became effective when signed by the governor on March 7, 2005. On March 9,

---

[1] The attorneys for plaintiffs and attorneys for defendants in this case and the Blackmoon case are identical.

[2] SDCL 7-8-10 allows county commissioners to redistrict only in a year ending in 2 utilizing information from the most recent decennial census with the purpose of fashioning districts containing "as near as possible an equal number of residents."

4

2005, the Charles Mix County commissioners submitted a redistricting request to the governor pursuant to HB 1265. Defendants scheduled a meeting with the Charles Mix County commissioners for March 23, 2005, as a result of the redistricting request.

On March 10, 2005, plaintiffs moved in this case for a temporary restraining order (TRO) and preliminary/permanent injunction. Plaintiffs ask that the court enjoin defendants from enforcing House Bill 1265 absent preclearance. The TRO was granted and a hearing was scheduled on the preliminary injunction request before a three-judge panel as required by 28 U.S.C. § 2284.

## II. Standing

Defendants allege that plaintiffs, as residents of Shannon and Todd counties, lack standing to challenge HB 1265.[3] Defendants allege that despite HB

---

[3] The text of House Bill 1265 reads as follows:

Section 1. That chapter 7-8 be amended by adding thereto a NEW SECTION to read as follows: Notwithstanding the provisions of § 7-8-10, if a majority of the board of county commissioners of any county become aware of facts that call into question whether the county's commissioner districts comply with state or federal law, the board of county commissioners may request that the Governor and secretary of state grant the board permission to revise the boundaries of the county commissioner districts.

Section 2. That chapter 7-8 be amended by adding thereto a NEW SECTION to read as follows: The Governor and secretary of state, after consultation with the board of county commissioners, may jointly issue to the board of county commissioners a written order affirming that good cause exists for redistricting and authorizing the board of county commissioners to revise the county's commission districts based on information from the last preceding federal decennial census.

5

1265's general language of application to all counties, that HB 1265 was passed to address a problem in Charles Mix County. The only pending implementation action is in Charles Mix County. As one of the parties to the consent order, plaintiffs contend they have standing to seek a preliminary/permanent injunction.

Only a party to a consent decree may bring an action to enforce the consent decree. <u>Blue Chip Stamps v. Manor Drug Stores</u>, 421 U.S. 723, 749, 95 S. Ct. 1917, 44 L. Ed. 2d 539 (1975). Thus, plaintiffs are a proper party to bring this enforcement action. Furthermore, it is well established that residents of a jurisdiction covered by § 5 have "standing to obtain an injunction against further enforcement, pending the State's submission of the legislation pursuant to Section 5." <u>Allen v. State Bd. of Elections</u>, 393 U.S. 544, 555, 89 S. Ct. 817, 22 L. Ed. 2d 1 (1969).

---

> Section 3. That chapter 7-8 be amended by adding thereto a NEW SECTION to read as follows: The board of county commissioners may, within one hundred eighty days of receipt of such written order, redistrict the county's commission districts once to avoid any perceived or potential violation of state or federal law. The commissioners may change the boundaries of the commissioner districts in order that each district shall be as regular and compact in form as practicable and shall redistrict the county so that each commission district contains an appropriate number of residents, as determined by the last preceding federal decennial census; or the board of county commissioners may, at its discretion, choose to have all of its commissioners run at large. Such redistricting shall occur only after giving notice by publication for at least one week in the official newspapers of the county.
>
> Section 4. Whereas, this Act is necessary for the support of the state government and its existing public institutions, an emergency is hereby declared to exist, and this Act shall be in full force and effect from and after its passage and approval.

To show standing, plaintiffs must meet three requirements. Plaintiffs must: (1) have suffered injury in fact; (2) demonstrate a causal connection between the injury and the complained-of conduct; and (3) show that a favorable decision will address plaintiffs' injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). "Injury in fact" requires a showing of an actual or imminent invasion of a legally protected interest, which is both concrete and particularized to the plaintiffs. Id. An imminent injury must be more than a possible future injury, but rather a certain impending injury. Johnson v. Missouri, 142 F.3d 1087, 1089 (8th Cir. 1998). Additionally, plaintiffs must demonstrate a personal stake in the protected interest to establish a concrete and particularized injury. Id.

Plaintiffs have suffered an injury in fact. Paragraphs 1 and 6 of the consent order create a legally protected interest. Defendants are obligated under paragraph 1 to preclear all voting changes which affect Shannon and Todd counties before implementing them, and paragraph 6 gives plaintiffs the power to enforce that obligation. Plaintiffs have shown that for over 25 years defendants have intended to violate and have violated the preclearance requirements of the VRA. The State of South Dakota's enactment of a new voting change statute which included an emergency clause[4] providing for immediate implementation without preclearance evidences an imminent invasion of plaintiffs' legally protected right to live in a county without continuing violations of the VRA. Once the governor signed HB 1265, the plaintiffs who reside in Shannon and Todd counties were subjected to an unprecleared change regarding the counties' redistricting powers. This constitutes

---

[4]The South Dakota Constitution states that acts passed by the legislature shall not take effect until 90 days after the adjournment of the session at which it is passed, unless the act is declared to be an emergency and is passed by a two-thirds vote of the members of both houses of the legislature. Art. III, § 22, S.D. Const. When passed during a regular session, as HB 1265 was, the bill would normally take effect on July 1. SDCL 2-14-16.

an injury in fact to these plaintiffs. Furthermore, plaintiffs, by being a party to the initial consent decree, have shown a personal stake in the protected interest.

In these circumstances, the causal connection and remedy elements are rather straightforward. Here, paragraph 1 of the consent decree obligates defendants to preclear all voting changes which affect Shannon and Todd counties before implementing them. By failing to comply with paragraph 1, the Secretary of State has invaded that interest. There is a causal connection between that noncompliance and the conduct at issue, namely the emergency implementation of HB 1265 absent preclearance. That specific action was the direct cause of plaintiffs' complained-of injury, namely denial of their right to live in a county without ongoing violations of the VRA. Preventing the secretary of state from taking any steps to participate in further implementation of HB 1265 absent preclearance will halt the initial implementation and prevent any further implementation until HB 1265 is properly precleared. For all of these reasons, plaintiffs have standing to request a preliminary/permanent injunction.

### III. Preliminary Injunction

When ruling on a motion for a TRO or a preliminary injunction, the court must consider (1) the likelihood of success on the merits; (2) the threat of irreparable harm to the moving party; (3) balancing this harm with any injury an injunction would inflict on other interested parties; and (4) the effect on the public interest. Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981). "No single factor is dispositive; rather, each factor must be considered to determine whether the balance of equities weighs toward granting the injunction." United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1179 (8th Cir. 1998).

1.  **Success on the Merits**

The consent order contains very broad language subjecting every "standard, practice, or procedure" affecting voting in Shannon or Todd counties to preclearance "before it may be implemented." HB 1265 changes the decennial redistricting practice or procedure for all South Dakota county commission districts and allows additional redistricting "to avoid any perceived or potential violation of state or federal law." An alleged violation need only be within the perception of "a majority of the board of county commissioners of **any** county." HB 1265 (emphasis added). Additionally, HB 1265 by its terms is effective immediately. This language immediately changes the practice and procedure of redistricting county commissioner districts in Shannon and Todd counties.

The moving party need not demonstrate a mathematical probability of success on the merits, such as greater than 50 percent. Heartland Academy Cmty. Church v. Waddle, 335 F.3d 684, 690 (8th Cir. 2003). Rather, the movant must have a "fair chance of prevailing" after discovery, formal procedures, complete evidence, and a full trial on the merits. Id. The court finds that plaintiffs have adequately demonstrated a fair chance of prevailing on the merits based on the plain language of the consent order which requires preclearance "before it may be implemented."

Alternatively, § 5 of the VRA requires preclearance of HB 1265. Section 5 declares that whenever a covered jurisdiction shall "enact or seek to administer any . . . standards, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964," it must obtain preclearance from the Attorney General or a declaratory judgment from the United States District Court for the District of Columbia. Failure to do so renders the change unenforceable, see Hathorn v. Lovorn, 457 U.S. 255, 269, 102 S. Ct. 2421, 72 L. Ed. 2d 824 (1982), and the plaintiff may be entitled to injunctive relief prohibiting the

implementation of the change. Clark v. Roemer, 500 U.S. 646, 652-53, 111 S. Ct. 2096, 114 L. Ed. 2d 691 (1991).

Here, HB 1265 changes the practice or standard for redistricting county commission districts. Thus, HB 1265 is subject to the preclearance requirements of § 5. Defendants contend, however, that the state should not be enjoined from implementing HB 1265 in the parts of the state which are not covered by the § 5 preclearance requirement. Defendants primarily rely on Lopez v. Monterey County, 525 U.S. 266, 269, 119 S. Ct. 693, 142 L. Ed. 2d 728 (1999) as support for this contention. In Lopez, however, the Supreme Court did not reach this issue. Lopez only concluded that a partially covered state must preclear state statutes to the extent those statutes affect voting changes in covered counties. Id.

HB 1625 is statewide in its application. A law that is statewide in its application is inoperative statewide until it has been subjected to preclearance. United Ossining Party v. Hayduk, 357 F. Supp. 962, 968 (S.D.N.Y. 1971). See also Florida Op. Div. Elect. 98-13, August 19, 1988 (DE 98-13) (both covered and non-covered counties should delay implementation of voting change statute pending preclearance to avoid potential voter confusion, to ensure the integrity of the election process, and to promote uniform application of the election laws consistent with state and federal laws and constitutions).

Defendants claim that if the portion of House Bill 1265 that is applicable to Todd and Shannon counties violates federal law or the consent order, that portion can be stricken under the theory of severability. Defendants rely on South Dakota Educ. Ass'n/NEA by and through Roberts v. Barnett, 582 N.W.2d 386, 394 (S.D. 1998) as support for this proposition and paragraph 3 of the consent order. In Barnett, the South Dakota Supreme Court recognized that the court should uphold sections of a statute if the unconstitutional portions of a statute can be extracted and the remainder left intact, but only if the remaining sections could stand by

10

themselves and if it appeared the state legislature would have intended the remainder to take effect without the invalidated section. Id. A reading of HB 1265 makes clear that severability is not possible. Defendants do not identify which language could be stricken. In fact, no language in HB 1265 specifically mentions just Shannon and Todd counties. Thus, the only way to "fix" the statute would be to add language. This is inconsistent with the concept of severing the offending language.

For all of these reasons, the court finds that plaintiffs have adequately demonstrated a fair chance of prevailing under both the plain language of the consent decree and alternatively under § 5 of the VRA, that the doctrine of severability does not apply, and that it would be improper to apply statewide legislation selectively. Thus, this factor weighs in favor of plaintiffs.

### 2. Threat of Irreparable Harm

The secretary of state has represented to the court that he will implement HB 1265 in the absence of an injunction prohibiting him to do so. See Fifth Supplemental Affidavit of Chris Nelson, Docket 104, ¶ 10. After the governor and secretary of state authorize a county to redistrict, their involvement in the redistricting process is over and plaintiffs would no longer have access to the courts through its contempt powers to enforce the consent decree with regard to HB 1265. This factor weighs in favor of plaintiffs.

### 3. Balancing the Harms

The potential harm to defendants, if any, can be minimized or mitigated by advancing the preclearance submission date. The next scheduled county commission election in Charles Mix County is in 2006, which allows more than sufficient time for preclearance. The parties testified that pursuant to the consent

order, the preclearance process includes a 45-day period for review by plaintiffs prior to submission to the Department of Justice followed by a 60-day review process by the Department of Justice. Defendants argue that the process could be further delayed depending on the response of the Department of Justice or further challenge by plaintiffs. Delaying the effective date of HB 1265 an additional 105 days, or perhaps slightly longer, will only minimally injure defendants and other interested parties. This minimal injury is greatly outweighed by the threatened irreparable harm to plaintiffs.

Defendants are fully aware that expedited preclearance consideration under the consent order is possible within even more limited timeframes than we have in this case. Defendants sought to expedite preclearance of the special congressional election necessitated by the vacancy created by then-Representative Janklow's criminal conviction. Under that circumstance, defendants made a request on February 19, 2004, for expedited consideration of SDCL 12-11-1, -2, and -3, which provide for the special congressional election to be held June 1, 2004. See Third Supplemental Affidavit of Chris Nelson (Docket 81, Exhibit 5). This court granted permission for expedited preclearance submissions, the Department of Justice granted preclearance, and the election proceeded on that date. Defendants could have sought expedited preclearance in this case and chose not to. Regardless, with this recent history of expediting preclearance of emergency legislation, the court is confident that preclearance will not interfere with the 2006 Charles Mix County elections, further minimizing any injury to defendants.

Defendants in this case claim that Charles Mix County residents are harmed because they are unable to redistrict in response to the pending litigation entitled Blackmoon. (Docket 113-1, p.6). While defendant Ganje is making that argument in this case, the Blackmoon defendants are simultaneously arguing in the Blackmoon litigation that the existing districts are adequate because they are based on a rational policy to respect township and city boundaries. Defendants'

12

Summary Judgment Response, <u>Blackmoon</u> (Docket 18, March 24, 2005). Because lack of preclearance harms plaintiffs more than defendants, this factor favors plaintiffs.

### 4. Public Interest

Defendants avoided preclearing over 700 voting changes for decades. The citizens of Shannon and Todd counties were subjected to continuing violations of the VRA. The consent order was negotiated in an environment where the enormity of this backlog resulted in negotiation of the broad preclearance language present in the consent order. The court is still supervising preclearance of hundreds of unprecleared voting changes pursuant to the consent order. Furthermore, defendant Nelson was found in 2002 by a three-judge panel to have violated the preclearance requirement of § 5 of the VRA by failing to preclear the 2001 Legislative Redistricting Plan for South Dakota. See <u>Bone Shirt v. Nelson</u> Civ. 01-3032 (D.S.D. 2004) (Docket 44). Additionally, the inclusion of an emergency clause in HB 1265 gives the appearance of a rushed attempt to circumvent the VRA. The public has an interest in ensuring compliance with federal laws, namely the VRA. This factor also favors issuing an injunction.

Plaintiffs have satisfied the four <u>Dataphase</u> factors to the extent necessary to support the scope of the requested preliminary injunction.

### IV. Conclusion

For the foregoing reasons, it is hereby ORDERED, ADJUDGED and DECREED that:

1. Plaintiffs' motion for a preliminary injunction (Docket 110) is granted. Defendants are enjoined and restrained from implementing

13

House Bill 1265 (House Bill No. 1265, "An Act to provide for the redistricting of boards of county commissioners under certain circumstances and to declare an emergency," Filed March 7, 2005) absent preclearance.

2. House Bill 1265 and SDCL 7-8-10, together with any ancillary regulations, shall be submitted by defendants to plaintiffs within 10 days for plaintiffs' 45-day review. After the 45-day review period, defendants shall then submit HB 1265 and SDCL 7-8-10, together with ancillary regulations, to the Department of Justice for preclearance.

Dated July 13, 2005.

BY THE COURT:

_____
DIANA MURPHY
UNITED STATES CIRCUIT JUDGE

_____
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

_____
JOAN N. ERICKSEN
UNITED STATES DISTRICT JUDGE